# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1689

_____

Diana F. Wells,          *

                   *

     Appellant,       *

                   *      Appeal from the United States

    v.                 *      District Court for the

                   *      Western District of Missouri.

SCI Management, L.P.; SCI    *

Missouri Funeral Services, Inc.,   *

d/b/a Mount Moriah Funeral     *

Home,                  *

                   *

     Appellees.       *

_____

Submitted: October 19, 2006

Filed: December 1, 2006

_____

Before WOLLMAN, RILEY and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Diana F. Wells appeals an adverse grant of summary judgment on her claims of gender discrimination and retaliation under Title VII of the Civil Rights Act and

the Missouri Human Rights Act. The district court[1] held that Wells failed to establish a prima facie case for either claim. We affirm.

## I.    BACKGROUND

SCI Missouri Funeral Services, Inc., a subsidiary of Service Corporation International,[2] operates numerous funeral homes in Missouri. In 1981, Diana Wells began working as an apprentice funeral director and embalmer for an SCI subsidiary in Houston, Texas, and eventually advanced to the position of funeral director. In 1990, Wells began working as a funeral director in a Saint Louis SCI funeral home. She was promoted to Regional Vice President of Revenue Services in 1995. Two years later, Wells was assigned the same position for a different region, which necessitated a move to Kansas City. In 1999, Wells's position was eliminated, and she was given a position as funeral director at Mount Moriah, an SCI funeral home in Kansas City. Her immediate supervisor at Mount Moriah was Matt Roening.

Wells's employment at Mount Moriah was marked by complaints from both customers and co-workers. In 1999, a representative from the *Kansas City Star* contacted SCI and complained that Wells was rude and yelled at the newspaper staff in regards to the way the newspaper had planned to word a particular obituary. In 1999 and 2000, SCI received complaints about Wells from families who had funerals arranged by Mount Moriah. The McMillan family complained that Wells had been argumentative, untruthful and lacking in compassion. To investigate the complaint, two SCI Area Managers spoke with the McMillan family and then discussed their complaints, as well as the complaints of at least three other families, with Wells.

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

[2]SCI Management is no longer a party to this litigation. The remaining defendant will be referred to simply as "SCI."

Wells was issued a written warning about her conduct. Subsequently, the Miller and Edmond families, other Mount Moriah customers, also complained about Wells's behavior. The Dahl family also lodged a complaint against Wells, describing her conduct as "at best abrasive in tone and manner."

In 2001, three Mount Moriah employees complained to its General Manager, Jerry Griffin, that Wells was rude, unprofessional and disruptive. Griffin interviewed other employees to determine how pervasive the sentiment was and discovered three additional employees whose sentiments echoed the original complaints. Griffin reported the complaints of the employees, and those of the McMillan and Dahl families, to SCI's Regional Vice President, Mark McGilley, who suspended Wells for five days and warned her that future problems would result in her termination. Wells filed a complaint with the Missouri Human Rights Commission and Equal Employment Opportunity Commission (collectively, "EEOC") alleging her suspension was based on her gender. The EEOC declined to take action, and Wells did not pursue the matter further.

In 2003, a co-worker complained to SCI's "CareLine," a toll-free ombudsman service, that Wells harassed and belittled him. During that same time, another family, the Boones, complained that Wells had been argumentative during their interaction with Wells in her capacity as funeral director.

SCI received customer complaints about other employees as well. Rodney Heinsohn, a primary arranger at Mount Moriah, received a complaint from a family alleging he was "abrupt, rude and pushy." Forrest Walker, a funeral director at Mount Moriah, received several complaints from customers, all of which were determined to be unsubstantiated. The record is unclear as to the identity of Heinsohn's and Walker's supervisor. Though not in response to a customer complaint, John Gattshall and George Salyer, whose supervisor was Michael Shannon, received written disciplinary notices for expressing contempt for management policies.

Wells also presented evidence that she endured sexist comments from co-workers. Leon Emas, a marketing employee at Mount Moriah, called Wells two sexually explicit and offensive names. Walker also told Wells that she "was not in the good old boys' club and [she] never would be" and expressed his belief that "women should be barefoot and pregnant."

In the fall of 2003, SCI determined that, in light of decreasing revenues and high operating expenses, it needed to restructure and that a reduction-in-force ("RIF") was necessary. McGilley's position as Regional Vice President was eliminated, and he accepted a position as Marketing Director for the Kansas City and Wichita areas, in which he was tasked with implementing the RIF. In this capacity, McGilley determined Mount Moriah was operating below expectations based on financial conditions such as low operating margins and high salary expenses. McGilley's analysis also persuaded him that SCI had five more funeral directors than it needed in the Kansas City area. As a result, he terminated the employment of five funeral directors, three men and two women. In selecting Wells as one of the five, McGilley considered her personnel record as well as the fact that she was the highest paid funeral director at Mount Moriah. In total, McGilley eliminated nine positions during the RIF, four men and five women.

After her position was eliminated, Wells filed another charge with the EEOC. After exhausting her administrative remedies, Wells filed a complaint in district court alleging gender discrimination and unlawful retaliation. SCI moved for and received summary judgment on both counts. The district court concluded that Wells's evidence was devoid of facts that would permit an inference that gender played a role in the adverse employment action to support her discrimination claim. As for the retaliation claim, the district court concluded that Wells failed to establish a causal connection between her complaint to the EEOC and the elimination of her position during the RIF. Wells appeals the grant of summary judgment.

## II.    DISCUSSION

We review a grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party. *Cottrill v. MFA, Inc.*, 443 F.3d 629, 635 (8th Cir. 2006). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### A.    Gender Discrimination

Because Wells concedes that she does not have direct evidence to support her claim of discrimination, we analyze her claim under the *McDonnell Douglas* burden-shifting framework. *Griffith v. City of Des Moines*, 387 F.3d 733, 736-37 (8th Cir. 2004). To survive the motion for summary judgment, Wells must present a prima facie case of gender discrimination, which requires proof in the record that: (1) she was a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) there are facts that give rise to an inference of unlawful gender discrimination. *Rorie v. United Parcel Serv., Inc.*, 151 F.3d 757, 760-61 (8th Cir. 1998). Wells attempts to satisfy the fourth element by showing that she was treated differently from similarly situated males, which is a typical means of proof for the fourth element in a gender discrimination case. *E.g.*, *Turner v. Gonzales*, 421 F.3d 688, 694 (8th Cir. 2005). Once the employee establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas v. Green*, 411 U.S. 792, 804 (1973). Upon such a showing, the burden shifts back to the employee to show that the employer's reason was pretextual. *McDonnell Douglas*, 411 U.S. at 804. The parties do not dispute that Wells satisfies elements (1), (2) and (3) of the prima facie case for gender discrimination. The district court held that Wells failed to present any evidence that would permit an inference that her gender was a factor in her termination, and we agree.

Wells failed to establish the fourth element of the prima facie case because she did not show that she was treated differently from similarly situated males. Wells received complaints from four customers in 1999, one customer in 2000, three employees in 2001, and one customer and one employee in 2003. SCI managers gave her a warning about her conduct in 1999 and suspended her in 2001.

Wells presented evidence that four males, Heinsohn, Gattshall, Salyer and Walker, also received complaints and argues that, unlike her, they were not disciplined. Wells has the burden of demonstrating that she and the allegedly disparately treated men were "similarly situated in all respects." *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000). We believe the relevant respects in this case include the number of complaints each employee received, the employee's position and the employee's supervisor. *See id*. The record reveals that Heinsohn received only one customer complaint as compared to Wells's six. Gatshall and Salyer did not receive complaints from customers and were, in fact, disciplined for expressing contempt for management. Additionally, they were not funeral directors, had different supervisors from Wells and worked at different locations from Wells. Walker received fewer complaints than Wells and, unlike the complaints lodged against Wells, those against Walker were determined to be unsubstantiated. Given this undisputed evidence, we agree with the district court that these four men were not similarly situated in all relevant respects to Wells.

Wells also failed to show that she was treated differently from similarly situated males during the RIF. Wells presented no evidence that similarly situated males were not terminated pursuant to the RIF. Rather, the record is clear that for the Kansas City area, McGilley eliminated five funeral director positions, three men and two women. In total, McGilley eliminated nine positions, including, in addition to funeral directors, administrative and driver positions. Of the nine people terminated under the RIF, four were men. This evidence, even viewed in a light most favorable to Wells, does not give rise to an inference that gender played a role in her termination. *See Hesse v. Avis Rent-a-Car Sys., Inc.*, 394 F.3d 624, 631–32 (8th Cir. 2005) (holding that

evidence that plaintiff was the only female out of 14 employees terminated pursuant to a RIF was not sufficient to show she was treated differently from similarly situated males because job classifications were different).

Wells also presented evidence that she endured sexist comments made by some of her male co-workers at Mount Moriah. We decline to address this argument to the extent that Wells frames it as evidence of the "environment" at Mount Moriah because she did not allege a hostile work environment claim. As to the gender discrimination claim, we believe the statements are immaterial because they were made by non-decisionmakers and were unrelated to the decisional process itself. *See Rivers-Frison v. Southeast Mo. Cmty. Treatment Ctr.,* 133 F.3d 616, 619 (8th Cir. 1998). Furthermore, to the extent that Wells offers as evidence that would permit an inference of discrimination the fact that her position subsequently was assumed by a male, we disagree. *Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1167 (8th Cir. 1985) ("The fact alone that [Plaintiff]'s duties were assumed by a younger person . . . itself is insufficient evidence to establish a prima facie case."). We therefore agree with the district court that Wells failed to prove a prima facie case of gender discrimination.

Having determined that Wells failed to present a prima facie case of discrimination, we need not analyze SCI's proffered legitimate, nondiscriminatory reason for the discharge, although we note a RIF certainly constitutes such a reason. *See Wittenburg v. Am. Express Fin. Advisors, Inc.*, 464 F.3d 831, 836 (8th Cir. 2006); *Hardin v. Hussman*, 45 F.3d 262, 265 (8th Cir. 1995); *Holley*, 771 F.2d at 1168. Wells's remaining evidence—that a male funeral director assumed her duties and that SCI changed its proffered explanation for her termination—amounts to a challenge to the legitimacy of the RIF, which is only relevant to the pretext portion of the *McDonnell Douglas* test. *See Grabovac v. Allstate Ins. Co.* 426 F.3d 951, 956 (8th Cir. 2005) (evaluating replacement by someone of opposite gender at the pretext stage of gender discrimination analysis); *Kobrin v. Univ. of Minn.*, 34 F.3d 698, 703 (8th Cir. 1994) (explaining that changes in proffered reason for termination are relevant to a finding of pretext). Because she has not made a prima facie case, we need not

address these arguments. Accordingly, we affirm the district court's grant of summary judgment on Wells's gender discrimination claim.

## B. Retaliation

To survive summary judgment, Wells must make a prima facie case of unlawful retaliation by demonstrating that: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two. *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 851 (8th Cir. 2005). The district court held that Wells satisfied the first two elements but failed to satisfy the third. We agree.

Wells filed her initial charge of discrimination with the EEOC in January 2001 and was fired in November 2003, creating a 34-month gap between the charge and the termination. "A gap in time between the protected activity and the adverse employment action weakens an inference of retaliatory motive." *Hesse*, 394 F.3d at 633. Additionally, the Supreme Court has held that an adverse employment action taken 20 months after the employee filed an EEOC complaint "suggests, by itself, no causality at all." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) (per curiam). Here, the lack of a causal connection is reinforced by the undisputed evidence of the various customer and co-worker complaints lodged against Wells. "Filing a complaint [of discrimination] does not clothe [Wells] with immunity for past and present inadequacies." *Calder v. TCI Cablevision of Mo.*, 298 F.3d 723, 731 (8th Cir. 2002) (internal quotations omitted).

Wells asserts that the same evidence that supports her claim of discrimination supports her claim of retaliation. We have addressed those arguments, and based upon our review of the record we find Wells's claim too attenuated to withstand summary judgment, for there is a notable absence of any causal connection between her report of discrimination to the EEOC and the termination of her employment pursuant to the RIF. Because Wells failed to establish a prima facie case for unlawful retaliation, we

are not required to address her argument that the RIF was pretextual.  *Turner*, 421 F.3d at 696.

## III.    CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.