# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3287

_____

Wendy S. Fiero

*Plaintiff - Appellant*

v.

CSG Systems, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: June 11, 2014
Filed: July 17, 2014

_____

Before LOKEN, BEAM, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Wendy Fiero appeals the district court's[1] grant of summary judgment in favor of CSG Systems, Inc ("CSG") on her claims of gender discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. We affirm.

---

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

## I. Background

From January 2006 until April 2009, Fiero worked as a business analyst on CSG's analysis and design team. In that role, Fiero was responsible for analyzing customer requests for software modifications to determine what impact a request may have on the overall software product; she was not required to have significant technical and internet-domain skills. In April 2009, Lisa Vandermark, director of one of CSG's teams—the navigator team—offered Fiero a promotion as a senior business analyst on the navigator team, and Fiero accepted. Sarah Ericson, CSG's human resources business partner, approved the promotion.

However, later in 2009, CSG eliminated the navigator team and all positions on that team, including Fiero's and Vandemark's positions. Vandemark became the director of the analysis and design team. Murali Ambekar, who was supervisor of the analysis and design team, began reporting to Vandemark. Vandemark, with Ambekar's input and agreement, decided to offer Fiero a position on the analysis and design team, which Fiero accepted. Ambekar became Fiero's immediate supervisor. In her position on the analysis and design team, Fiero was required to have broader technical skills than required by her prior positions. In February 2010, after Fiero had worked in this position for six weeks, Ambekar determined that she was not meeting his expectations. Thus, he met with Fiero for a review of her performance. At the review, Ambekar informed Fiero that she needed to improve her technical expertise and domain knowledge. Fiero admitted that she had less technical experience than other members of her team. In an effort to increase Fiero's technical and internet-domain skills, Ambekar requested that Fiero complete what the parties call a "mapping project." Around this same time, Ambekar reviewed the performance of another supervisee, John Hadland, who was also a member of the analysis and design team. Hadland had been arriving late to work and needed to improve on his ability to deliver tasks on time. After this review, Hadland's performance improved.

In August 2010, Ambekar again reviewed the performance of Fiero. During Fiero's review, Ambekar explained that she still was not meeting expectations and that her lack of technical knowledge resulted in undue delays in the completion of projects. Ambekar also explained that Fiero had failed to make sufficient progress on the mapping project assigned at her earlier review. The review states that Fiero agreed to provide Ambekar with a date by which she would complete the project. By the end of September, Fiero still had not completed the mapping project. After consulting with Vandemark and Ericson, Ambekar verbally warned Fiero on September 28 that her domain and technical expertise still were lacking, that her handling of certain projects was not satisfactory, and that he had not received a completion date for the mapping project. Ambekar told Fiero that this was a formal verbal warning and that, if the situation did not improve, the next step would involve the imposition of a formal performance improvement plan ("PIP").

In mid-October, Fiero met with Ericson. Fiero complained to Ericson that Ambekar was unfairly scrutinizing her compared to her male peers and that Ambekar was aggressive with her and Hadland during a meeting. During this meeting, Fiero also admitted that her performance was not "up to par." Near the end of October, Ambekar and Vandemark discussed Fiero's performance and agreed that she should be placed on a thirty-day PIP. On November 1, Fiero was placed on the PIP, which she signed. The PIP outlined her performance problems, including her continued lack of domain expertise; her poor design of projects, which resulted in undue delays; and her inability to complete tasks, which resulted in the reassignment of resources. The PIP also included other areas in which Fiero needed to improve, such as completing the mapping project, taking ownership of her work, and developing a better understanding of the technical aspects of her position. In accordance with the PIP, Ambekar met with Fiero weekly. Shortly before the end of the thirty days, Ambekar and Vandemark concluded that Fiero's employment should be terminated because of her lack of improvement and failure to meet all of the objectives required by the PIP. Ericson agreed, and CSG discharged Fiero.

After being placed on the PIP but before she was discharged, Fiero filed a charge of gender discrimination with the Equal Employment Opportunity Commission ("EEOC"). Fiero exhausted her administrative remedies and then filed a complaint in Nebraska state court, alleging gender discrimination and unlawful retaliation under Title VII. CSG removed the case to federal district court. The district court granted CSG's motion for summary judgment and dismissed both of Fiero's claims with prejudice. Fiero appeals the grant of summary judgment.

## II. Discussion

"We review a grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party." *Wells v. SCI Mgmt., L.P.*, 469 F.3d 697, 700 (8th Cir. 2006). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## A. Gender Discrimination

Title VII prohibits discrimination in employment on the basis of gender. *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011). Because Fiero has not presented any direct evidence to support her claim of discrimination, we analyze her claim under the *McDonnell Douglas* burden-shifting framework. *See Wells*, 469 F.3d at 700. Under that framework, "plaintiff must first present a prima facie case of intentional discrimination. The burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for its action. If defendant meets that minimal burden, plaintiff must show that the proffered nondiscriminatory reason is merely a pretext for unlawful . . . discrimination." *Putnam v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir. 2003). To establish a prima facie case of gender discrimination, Fiero must demonstrate that: "(1) she was a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment

action; and (4) there are facts that give rise to an inference of unlawful gender discrimination." *Wells*, 469 F.3d at 700.

Assuming, without deciding, that Fiero established a prima facie case of gender discrimination, CSG has offered a legitimate, non-discriminatory justification for terminating her employment. CSG identified substantial performance-related problems, including Fiero's inability to complete the mapping project on time, her lack of domain expertise and failure to improve it, and her poor design of projects resulting in delays and the reassignment of resources. These performance-related concerns constitute legitimate, non-discriminatory justifications for discharging Fiero. *See, e.g.*, *Barnhardt v. Open Harvest Co-op.*, 742 F.3d 365, 372 (8th Cir. 2014) (holding that concerns regarding employee's performance, including excessive delegation of her responsibilities and tardiness, constituted legitimate, non-discriminatory justifications for termination of employment); *Chambers v. Travelers Cos., Inc.*, 668 F.3d 559, 567 (8th Cir. 2012) (holding that "performance deficiencies" constituted a legitimate, non-discriminatory basis for discharge).

Under the *McDonnell Douglas* framework, the burden shifts back to Fiero to show a genuine doubt that CSG's justification is pretextual. *See Wierman*, 638 F.3d at 995. She has failed to meet this burden. A plaintiff generally may show that a proffered justification is pretextual in two ways. *Fitzgerald v. Action, Inc.*, 521 F.3d 867, 873 (8th Cir. 2008). First, a plaintiff may rebut the factual basis underlying the employer's proffered explanation, thereby demonstrating that the explanation is unworthy of credence. *Id.* Second, a plaintiff may show that the employer's proffered explanation was not the true reason for the action, but rather that the impermissible motive more likely motivated the employer's action. *Id.* "In either case, the plaintiff 'must point to enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive.'" *Barnhardt*, 742 F.3d at 371 (quoting *Wierman*, 638 F.3d at 995) (internal quotation marks omitted). Importantly, Fiero's attempt to prove pretext requires more substantial evidence than is required to make

a prima facie case because evidence of pretext is viewed in light of CSG's proffered justification. *See Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 834 (8th Cir. 2002) (quoting *Sprenger v. Fed. Home Loan Bank*, 253 F.3d 1106, 1111 (8th Cir. 2001)); *see also Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 880 (8th Cir. 2005).

Fiero has pointed to no evidence that raises a genuine doubt as to the factual basis of CSG's justification. Nor has she identified sufficient evidence suggesting that CSG's conduct is more likely explained by an intent to discriminate against her on the basis of her female gender. Fiero did not dispute that she lacked the technical expertise of her coworkers when Ambekar determined that she was not meeting expectations after six weeks in her new position. Moreover, after Fiero received a formal verbal warning that she needed to improve her performance and finish the mapping project, Fiero admitted to Ericson that her performance was not "up to par." Fiero also concedes that she had not completed the mapping project by August, when Ambekar reviewed her performance and explained to her that she had not made sufficient progress on the project. She admits that she still had not completed the mapping project by the end of September, approximately seven months after the project was assigned. While Fiero claims that it was the fault of her colleagues that she did not complete the project, she has not demonstrated that Ambekar did not honestly believe that she failed to complete the project on her own accord and that her performance was otherwise deficient. *See Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1003-04 (8th Cir. 2012) (holding that in order to demonstrate pretext it is insufficient merely to show that the employer's justification was mistaken, but rather an employee must demonstrate that the employer did not honestly believe the proffered justification).

Fiero also argues that the evidence demonstrates that her performance was equivalent to that of her male colleagues, whom she argues were not disciplined or discharged. Fiero, though, only specifically points to Hadland, another member of the analysis and design team supervised by Ambekar. Fiero claims Ambekar took no

action against Hadland, a male employee whose performance she claims was worse than hers, and that this fact supports an inference that Ambekar discharged Fiero because of her female gender. "Instances of disparate treatment can support a claim of pretext." *Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1044 (8th Cir. 2000) (quoting *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994)). Fiero has the burden of proving that she and Hadland were similarly situated in all relevant respects, including that the offenses were of the same or comparable seriousness. *See, e.g.*, *id.*; *Harvey*, 38 F.3d at 972. "At the pretext stage of the *McDonnell Douglas* burden-shifting framework, the test for determining whether employees are similarly situated to a plaintiff is a rigorous one." *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 853 (8th Cir. 2005), *abrogated on other grounds by Togerson v. City of Rochester*, 643 F.3d 1031, 1043, 1058 (8th Cir. 2011) (en banc).

Fiero has not demonstrated that Hadland was similarly situated in all relevant respects. Ambekar reviewed Hadland's performance in February 2010 because Hadland was coming into work late and needed to improve his ability to deliver tasks on time. Unlike Fiero, Hadland significantly improved his performance after his review and received positive reviews thereafter. Hadland fully met expectations regarding work commitments and attendance and punctuality requirements at his 2010 annual review. No further action was required to correct his performance. On the other hand, at her review in August, Fiero still was not meeting Ambekar's expectations with respect to her technical knowledge and progress on her mapping assignment, and by the end of September, Ambekar gave Fiero a formal, verbal warning based on his belief that her performance was deficient. Even after Fiero was placed on the PIP, Ambekar determined that Fiero still was not meeting expectations and did not complete the PIP satisfactorily. Moreover, as Fiero conceded, Hadland had better technical skills than Fiero, and he was not given a mapping assignment to complete at his review in February 2010. Therefore, Hadland was not similarly situated, and Ambekar's treatment of Hadland does not create an inference that Ambekar took action against Fiero because of her female gender. *See Cherry v.*

*Ritenour Sch. Dist.*, 361 F.3d 474, 479 (8th Cir. 2004). Thus, Fiero has not raised a genuine doubt that CSG discharged her because of her gender rather than because of her documented performance issues. *See Wierman*, 638 F.3d at 995.

Accordingly, the district court properly granted summary judgment on Fiero's gender discrimination claim.

## B. Retaliation

"Title VII prohibits employers from retaliating against employees who file charges of discrimination . . . ." *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 818 (8th Cir. 1998); *see also* 42 U.S.C. § 2000e-3(a); *Brenneman v. Famous Dave's of Am., Inc.*, 507 F.3d 1139, 1146 (8th Cir. 2007). The *McDonnell Douglas* burden-shifting framework discussed above also applies to retaliation claims. *Logan*, 416 F.3d at 880. To establish a prima facie case of retaliation, Fiero must show that: "(1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two." *Wells*, 469 F.3d at 702. If Fiero establishes a prima facie case, CSG must then rebut it "by presenting evidence of a legitimate, non-retaliatory reason for the action it took against [Fiero]." *E.E.O.C. v. Kohler*, 335 F.3d 766, 772-73 (8th Cir. 2003). If CSG satisfies this burden, Fiero is "then obliged to present evidence that (1) creates a question of fact as to whether [CSG's] proffered reason was pretextual and (2) creates a reasonable inference that [CSG] acted in retaliation." *Smith*, 302 F.3d at 833.

Assuming, without deciding, that Fiero met her initial burden to establish a prima facie case of retaliation based on CSG's termination of her employment shortly after she filed a charge with the EEOC, she also must demonstrate that CSG's legitimate, nondiscriminatory reason for terminating her employment was pretextual. *See id.* With respect to her retaliation claim, Fiero relies on the same arguments for pretext that she made with respect to her gender discrimination claim. As we have

explained, Fiero has failed to create a question of fact as to whether CSG's legitimate, nondiscriminatory reason for her discharge was pretextual. Therefore, the district court properly granted summary judgment on Fiero's retaliation claim as well. *See Putnam*, 348 F.3d at 737.[2]

## III. Conclusion

For the aforementioned reasons, we affirm.

_____

[2]Fiero also argues that the district court erred in determining that Fiero's discharge was the sole retaliatory action taken against her. Fiero argues that her placement on the PIP after she complained to Ericson that Ambekar treated her differently than her male peers also constituted an adverse employment action in retaliation for statutorily protected activity. Fiero's placement on the PIP alone does not constitute an adverse employment action and cannot support her claim of retaliation. *See Givens v. Cingular Wireless*, 396 F.3d 998, 998 (8th Cir. 2005) (per curiam) (holding that placement on a PIP, without more, does not constitute an adverse employment action); *see also Fischer v. Andersen Corp.*, 483 F.3d 553, 556-57 (8th Cir. 2007) (holding that plaintiff "ha[d] not introduced facts sufficient to demonstrate an adverse employment action" where plaintiff had been placed on PIP).