# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-4105

_____

Clarence Putman,                              *
                                              *
    Plaintiff - Appellant,                    *
                                              *  Appeal from the United States
v.                                            *  District Court for the
                                              *  Eastern District of Missouri.
Unity Health System,                          *
                                              *
    Defendant - Appellee.                     *

_____

Submitted:  September 8, 2003

Filed:  November 7, 2003

_____

Before LOKEN, Chief Judge, McMILLIAN and HANSEN, Circuit Judges.

_____

LOKEN, Chief Judge.

After Unity Health System terminated Clarence Putman as a LAN Analyst, Putman, an African-American, commenced this action alleging race and retaliation discrimination and racial harassment in violation of state and federal law. The district court[1] granted summary judgment dismissing all claims. Putman appeals the dismissal of his federal race and retaliation discrimination claims under 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000e-2(a). We review the grant of summary

_____

[1]The HONORABLE CATHERINE D. PERRY, United States District Judge for the Eastern District of Missouri.

judgment de novo, viewing the evidence in the light most favorable to the nonmoving party and drawing all justifiable inferences in favor of the nonmoving party. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1134 (8th Cir.) (en banc), cert. denied, 528 U.S. 818 (1999). To survive a motion for summary judgment, the nonmoving party must "substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy." Wilson v. Int'l Bus. Machs. Corp., 62 F.3d 237, 241 (8th Cir. 1995) (quotation omitted). We affirm.

## I. Background.

Putman was hired by Unity's predecessor in 1986. He began working for Unity as a LAN analyst in 1996. In November 1999, Bob Heitzman became Putman's supervisor. At their first meeting on December 15, Heitzman criticized aspects of Putman's job performance and said that Putman was not "humble enough" and was "too prideful." The next day, Putman sent Heitzman a long e-mail that included a request that Heitzman explain these remarks. Heitzman's e-mail response explained, "I think you are so proud it's hard for you to admit you can and have made mistakes." The next day Putman sent a lengthy e-mail to a human resources coordinator complaining that Heitzman "is riding me."

Putman took a leave of absence from December 22, 1999 to February 14, 2000. On January 25, he submitted a grievance to Unity's human resources department, alleging a pattern of racial discrimination, primarily by Heitzman. A human resources coordinator investigated and advised Putman on February 15 of her conclusion that Heitzman's remarks were not racially motivated. Putman appealed to the director of human resources, again accusing Heitzman of making remarks with "racial overtones." On March 23, the human resources director responded, "There is no evidence that Bob Heitzman's treatment of you is motivated by your race."

On March 3, 2000, Putman engaged in a heated argument with a co-worker, which culminated in Putman walking out of Heitzman's office and leaving work early. Putman acknowledges that he was "aggravated" and concedes that he "may have" called the co-worker a "neanderthal." One week later, Bruce Burkman, Unity's Director of Customer Service, issued Putman a Last Chance Agreement. The Agreement recited that, based upon the March 3 incident, "Unity Health believes that termination of your employment is appropriate at this time," but he was being given "one last chance to maintain your employment." The Agreement stated that Putman would continue to report to Heitzman and specifically warned: "If there are any further incidents of disrespect or insubordination on your part directed toward Bob Heitzman, you will either immediately resign your employment or be discharged."

Putman took a second leave of absence from March 10 to April 23, 2000. He filed a charge of race discrimination during this period, and the EEOC issued a right-to-sue letter. On May 23, after Putman returned to work, Heitzman asked him to carry an on-call pager for an additional week because he had missed his turns in the normal rotation during his leave of absence. Putman flatly refused, and he was terminated the next day for insubordination. Six Unity officials including Heitzman and the Vice President of Human Resources took part in the termination decision. This lawsuit followed.

## II. The Race Discrimination Claims.

A plaintiff may prove intentional race discrimination using either direct or indirect (circumstantial) evidence. See Price Waterhouse v. Hopkins, 490 U.S. 228, 270-79 (1989) (O'Connor, J., concurring). Putman argues he presented sufficient evidence of both kinds to avoid summary judgment.

**A.** Putman first argues that the district court erred in granting summary judgment because Heitzman's comments at their initial meeting are direct evidence

of race discrimination.  Evidence is "direct" if it establishes "a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the employer's decision.  Thomas v. First Nat'l Bank of Wynne, 111 F.3d 64, 66 (8th Cir. 1997) (quotation omitted).  Heitzman's comments that Putman was not "humble enough" and "too prideful" were facially race-neutral.  When Putman asked Heitzman for an explanation, in an e-mail that did not refer to race, Heitzman put the comments in a race-neutral context that was relevant to the job performance issues discussed at their meeting.  Putman then submitted a grievance, and two human resources officials investigated and found no support for his assertion of race discrimination by Heitzman.  Finally, while Heitzman was involved in the events leading to Putman's Last Chance Agreement and eventual termination, these events occurred many months and two leaves of absence after the December 1999 meeting.  In these circumstances, we agree with the district court that no reasonable fact-finder could find that the comments in question are direct evidence that race discrimination actually motivated Unity's decision to terminate Clarence Putman.  See Kriss v. Sprint Communications Co., 58 F.3d 1276, 1281-82 (8th Cir. 1995).

**B.**  Putman next argues that summary judgment was inappropriate because he presented sufficient indirect evidence of race discrimination under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).[2]  Under that familiar three-step formula, plaintiff must first present a prima facie case of intentional discrimination.  The burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for its action.  If defendant meets that minimal burden, plaintiff must show that the proffered nondiscriminatory reason is merely a pretext for unlawful race discrimination.  In this case, the district court concluded that Putman failed to present a prima facie case of intentional race

---

[2]The McDonnell Douglas framework applies to Putman's claims under Title VII and § 1981.  See Roxas v. Presentation Coll., 90 F.3d 310, 315 (8th Cir. 1996).

discrimination "because he has failed to present evidence that similarly situated white employees were treated differently than he."

In the McDonnell Douglas analysis, "[t]he prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection," thereby "giv[ing] rise to an inference of unlawful discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-54 (1981). The concept is flexible, and the burden of establishing a prima facie case "is not onerous." Burdine, 450 U.S. at 253 & n.6.

McDonnell Douglas involved an allegedly discriminatory refusal to hire. The Court noted that plaintiff in such a case may satisfy his prima facie case burden "by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." McDonnell Douglas, 411 U.S. at 802. This showing eliminates two common nondiscriminatory reasons for a refusal to hire -- that the plaintiff was not qualified for the position or that no suitable vacancy existed.

This case involves an allegedly discriminatory discharge, which is more or less the converse of a refusal to hire. Two common nondiscriminatory reasons for a discharge are that the plaintiff was not qualified for the position or that the position was being eliminated. Therefore, McDonnell Douglas teaches that the plaintiff in a discharge case may satisfy his prima facie case burden by showing (i) that he belongs to a protected class; (ii) that he was qualified for a job; (iii) that he was discharged; and (iv) that, after his discharge, he was replaced by a person with similar qualifications. Absent a showing that plaintiff was replaced, he may still meet his flexible prima facie case burden, but the record reflects that his position was eliminated. In reduction-of-force cases, we have always required "some additional

showing" that discrimination was a factor in the termination. See, e.g., Walton v. McDonnell Douglas Corp., 167 F.3d 423, 427 (8th Cir. 1999).

In this case, Putman did not present evidence that he was replaced as a LAN Analyst. Therefore, to establish a prima facie case, he needed to present some other evidence that would give rise to an inference of unlawful discrimination. In some cases, we have concluded that evidence of pretext -- normally considered only at step three of the McDonnell Douglas analysis -- satisfied this aspect of the plaintiff's prima facie case burden. See Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1022 (8th Cir. 1998); Landon v. Northwest Airlines, Inc., 72 F.3d 620, 624 (8th Cir. 1995). A common way of proving pretext is to show that similarly situated employees were more favorably treated. See Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972-73 (8th Cir. 1994).

Unity offered a clear-cut, legitimate, nondiscriminatory reason for terminating Putman -- he refused to obey a direct order of his supervisor after being warned in the Last Chance Agreement that such insubordination would result in his discharge. "Our cases have repeatedly held that insubordination and violation of company policy are legitimate reasons for termination." Kiel, 169 F.3d at 1135. Heitzman's race-neutral comments made five months earlier are not evidence that termination for this reason was pretextual. See Hannoon v. Fawn Eng'g Corp., 324 F.3d 1041, 1047-48 (8th Cir. 2003). Putman presented no evidence that the order he refused to obey was given for any reason other than Heitzman's legitimate interest in equitably distributing pager responsibilities among the employees he supervised. Moreover, Putman presented no evidence that Unity had treated similarly situated white employees differently. Indeed, Unity presented uncontroverted evidence that it had terminated a white employee for insubordination in 2000 and had issued three last chance agreements to non-minority employees from 1999 to 2001.

-6-

Putman argues that the deposition testimony of human resources director Cindy Rosburg is sufficient evidence of pretext because, when asked by counsel for Putman whether she recommended that Unity terminate him in March, she said, "I think it was in March, yes." The Last Chance Agreement recites that Unity had grounds for termination in March, so Rosburg may in fact have recommended termination at this time even though Putman was not terminated until May. In any event, this uncertain testimony as to timing, made without the benefit of the relevant documents by a witness who was not the sole decisionmaker, does not raise a genuine issue of pretext.

In these circumstances, the district court correctly concluded that Putman had failed to present a prima facie case of a racially discriminatory discharge.

### III. The Retaliation Claims.

For a prima facie case of retaliation, Putman must show "that he engaged in protected conduct, that he suffered an adverse employment action, and that the adverse action was causally linked to the protected conduct." Kiel, 169 F.3d at 1136. Assuming without deciding that he met this burden, he must also show that Unity's legitimate, nondiscriminatory reason for the termination was pretextual. See Hunt v. Neb. Pub. Power Dist., 282 F.3d 1021, 1028 (8th Cir. 2002) (explaining the burden-shifting analysis of a Title VII retaliation claim). As we have explained, Putman failed to show pretext. Therefore, his retaliation claim was properly dismissed.

The judgment of the district court is affirmed. Appellee's motion to strike portions of appellant's brief and appendix is denied.

_____