# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-2594

_____

Rebecca Shirrell

*Plaintiff - Appellant*

v.

St. Francis Medical Center; Lisa Miller

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: April 13, 2015
Filed: July 16, 2015

_____

Before RILEY, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Rebecca Shirrell, a nurse formerly employed by St. Francis Medical Center (St. Francis), brought this action alleging religious discrimination and retaliation in violation of Title VII and the Missouri Human Rights Act (MHRA) after St. Francis terminated her employment. Shirrell alleged discrimination based on her Jewish faith and retaliation based on complaints she made concerning a co-worker's derogatory

remark about the Jewish faith. The district court[1] granted summary judgment in favor of St. Francis and Lisa Miller, the co-worker who made the derogatory remark, holding that Shirrell failed to make a prima facie showing of discrimination or retaliation under Title VII and failed to satisfy the requirements for her MHRA claims when the evidence showed St. Francis terminated Shirrell pursuant to hospital policy for an accumulation of disciplinary points. Shirrell appeals, and we affirm.

I.

St. Francis first hired Shirrell, who is Jewish, as a clinical nurse in 1995. Shirrell resigned her position in July 2000. In 2001, St. Francis re-hired Shirrell, where she continued to work until her 2012 discharge. In 2007, Shirrell moved to part-time status, primarily working weekends. Shirrell worked the weekend shift with Miller for a number of years. In late February or early March 2012, Miller was having a discussion about the purchase of a camper with another co-worker in Shirrell's presence. Miller, who is not Jewish, commented to the co-worker that she was going to try to "Jew down" or had "Jewed down" the seller of the camper to a lower price. Prior to this comment, Shirrell had not heard Miller or any other co-workers make derogatory remarks about the Jewish faith and did not have any issues in her working relationship with her co-workers.

Shirrell informed her supervisor, Tammy Hahn-Brown, who served as the Nurse Manager of Orthopedics, about Miller's comment in a phone call the following day. Hahn-Brown told Gerry Salter, St. Francis's Director of Orthopedic Services, about the incident and told Salter that she would speak with Miller about the incident and communicate with the staff regarding St. Francis's expectations of its employees. On March 5, 2012, Hahn-Brown posted a copy of St. Francis's harassment policy in

---

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

the nurses' room and sent an email to nurses and nursing assistants reminding them to be careful with their words and actions around patients, families, and co-workers at all times.

Roughly six weeks after Miller's comment, Shirrell informed Hahn-Brown that her work environment had become hostile, alleging that co-workers gave her the cold shoulder, that Miller asked Shirrell why she had complained to Hahn-Brown, and that Miller accused Shirrell of trying to get Miller in trouble. Shirrell admits, however, that she had very little interaction with co-workers during a typical weekend shift and that she never filed a harassment complaint or internal grievance during her employment with St. Francis. In late March or early April 2012, Hahn-Brown announced she was taking a different position within St. Francis, vacating her supervisory role over Miller and Shirrell. On April 20, 2012, St. Francis promoted Miller to assume Hahn-Brown's vacated position. Miller worked in her new position as Nurse Manager of Orthopedics under Hahn-Brown's supervision until late May 2012.

In late May or early June 2012, Miller brought two patient complaints concerning Shirrell to Salter's attention. Salter told Miller to investigate the complaints. Patients or family members of patients made these complaints on May 31, 2012, and June 2, 2012, alleging that Shirrell had been rude to a patient and failed to appear in a patient's room when summoned. Miller reported the results of her investigation, which labeled the complaints as unprofessional conduct, to Salter. Pursuant to St. Francis's Progressive Corrective Action Policy, which is designed to address disciplinary concerns by assessing points for various infractions and mandating disciplinary action based on accumulation of points, Salter assessed Shirrell a suspension, worth seven points.

By late May 2012, Shirrell had also accumulated five unscheduled absences within a 12-month period. The fourth and fifth absences occurred on May 24, 2012,

and May 26-27, 2012. Pursuant to St. Francis's Absenteeism and Tardiness Policy[2] and the Corrective Action Policy, Salter gave Shirrell a written warning and assessed her three disciplinary points. In late May or early June 2012, St. Francis also issued two separate oral warnings to Shirrell for incidents on May 17, 2012, and May 31, 2012, described as reluctance, disinterest, and/or neglect in carrying out responsibilities. The Corrective Action Policy valued each oral warning at one disciplinary point. Shirrell does not dispute either warning, one issued for failure to document waste of medication and one for neglecting to write a sedation score of a patient.

During a meeting held on June 6, 2012, Salter informed Shirrell that St. Francis was terminating her employment. Before making the decision to discharge Shirrell, Salter consulted with St. Francis's Human Resources (HR) department both in person and via phone to verify that HR was in agreement with Salter's assessment of Shirrell's disciplinary points. The decision to discharge Shirrell occurred during a meeting between Salter, Miller, and HR employee Teri Krietzer, with Salter making the final decision to terminate Shirrell. At the June 6th meeting, Salter informed Shirrell that St. Francis was terminating her employment pursuant to the Corrective Action Policy, which mandates the discharge of an employee who accumulates 12

---

[2]Shirrell argues that St. Francis incorrectly applied the Absenteeism and Tardiness Policy to Shirrell, treating her as a part-time employee under the policy when the number of hours she worked rendered the policy for part-time employees inapplicable to her. We find this dispute immaterial because we will not second guess St. Francis's application of its own personnel policy. See Bone v. G4S Youth Servs., LLC, 686 F.3d 948, 955 (8th Cir. 2012) (explaining that courts do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination" (internal quotation marks omitted)), cert. denied, 133 S. Ct. 1252 (2013). With no evidence of intentional discrimination in the application of the policy, we decline to pass judgment on St. Francis's determinations regarding Shirrell's unscheduled absences.

disciplinary points in a 12-month period. The disciplinary action form Salter prepared in connection with this meeting[3] indicated that Shirrell had accumulated 12 disciplinary points in a 12-month period, including 7 disciplinary points for patient and/or family complaints, 3 disciplinary points for 5 unscheduled absences in a 12-month period, and 2 disciplinary points for reluctance, disinterest, and/or neglect in carrying out her duties. The disciplinary action form also included a March 1, 2012 patient complaint and a notation that patient and family complaints had previously been addressed with Shirrell in 2011, although these did not figure into the assessment of the 12 points. Miller was present at the discharge meeting but did not speak, and Shirrell makes no allegations that Miller was the final decision maker regarding her termination. Shirrell similarly makes no allegations that Salter ever exhibited any bias against the Jewish faith.

On June 17, 2012, Shirrell filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the Missouri Commission on Human Rights (MCHR) alleging religious discrimination, retaliation, and termination. The EEOC and MCHR issued Notices of Right to Sue on December 14, 2012, and January 9, 2013, respectively. Shirrell initiated this action on March 4, 2013, asserting Title VII and MHRA claims against St. Francis and MHRA claims against Miller, alleging that her discharge was based on her religion and her complaints about discriminatory conduct. The defendants brought a motion for summary judgment, which the district court granted, holding that Shirrell failed to satisfy the McDonnell Douglas[4] burden-shifting framework with respect to her Title VII claims and failed to provide evidence to sustain her MHRA claims. This appeal follows.

---

[3]This form bears the date June 5, 2012, and Shirrell purportedly signed the form on this date. The parties do not dispute, however, that the discharge meeting occurred on June 6, 2012.

[4]McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

-5-

II.

We first consider whether the district court erred in granting summary judgment to St. Francis and Miller on Shirrell's MHRA claims. We review a district court's grant of summary judgment de novo, drawing all reasonable inferences and reviewing the evidence in the light most favorable to the non-moving party. Hill v. Walker, 737 F.3d 1209, 1216 (8th Cir. 2013). We will affirm the grant of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The MHRA makes it unlawful to "retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by [the MHRA]." Mo. Rev. Stat. § 213.070(2). Prohibited conduct under the MHRA includes discrimination based on religion. Id. § 213.055. Shirrell asserts that the district court erred in granting summary judgment on her retaliation claim because disputed issues of material fact exist with respect to whether Shirrell engaged in protected activity and whether a causal connection existed between the protected activity and her discharge. Shirrell asserts the district court erred with respect to her religious discrimination claim because a causal connection existed between her religion and her discharge. With respect to the MHRA claims against Miller, Shirrell also asserts that, because Miller was personally involved in the challenged conduct and Shirrell's discharge, she may be held individually liable under the MHRA.

Under the MHRA, a plaintiff alleging retaliation must meet three requirements: (1) the plaintiff complained of an MHRA-prohibited activity, (2) the employer took an adverse employment action, and (3) a causal connection exists between the complaint and adverse action. McCrainey v. Kan. City Mo. Sch. Dist., 337 S.W.3d 746, 753 (Mo. Ct. App. 2011). In resolving this claim, we need not address each element under the MHRA because the lack of a causal connection is fatal to Shirrell's

-6-

claim. The evidence shows St. Francis terminated Shirrell pursuant to hospital policy, rather than in response to her complaints about the overheard remark. Shirrell accrued 12 disciplinary points in a 12-month period, which mandated her discharge pursuant to the Corrective Action Policy. Shirrell had a history of disciplinary issues, primarily difficult relations with patients and families. The record simply does not support her assertion that she had a good disciplinary history. The record reveals that Shirrell's interactions with patients and families had been an ongoing concern, and Shirrell attempts to place undue significance on one satisfactory job review she received shortly before she began amassing the 12 disciplinary points that led to her discharge. Shirrell presents no evidence other than the timing of her discharge after her complaints to support a causal connection. Without other evidence, the fact that Shirrell's discharge occurred three months after her complaint is insufficient to prove causation. See Medley v. Valentine Radford Commc'ns, Inc., 173 S.W.3d 315, 325 (Mo. Ct. App. 2005) (holding that a one month period between protected activity and adverse action was insufficient to establish a causal connection in the absence of other evidence). The district court thus did not err in granting summary judgment in favor of the defendants on Shirrell's MHRA retaliation claim.

With respect to Shirrell's religious discrimination claim, the MHRA requires a plaintiff to prove: (1) the plaintiff was discriminated against with respect to her employment or the plaintiff was discharged, (2) the plaintiff's religion was a contributing factor in the discriminatory act or discharge, and (3) the plaintiff suffered damage as a direct result. Daugherty v. City of Md. Heights, 231 S.W.3d 814, 820 (Mo. 2007) (en banc). Shirrell has failed to present any evidence that would support the conclusion that her religion was a contributing factor in her discharge. The record is instead filled with evidence indicating that St. Francis terminated Shirrell pursuant to hospital policy after Shirrell accumulated 12 disciplinary points. One overheard offensive remark and a termination three months later falls far short of the requisite causal connection. See Brannum v. Mo. Dep't of Corr., 518 F.3d 542, 548 (8th Cir. 2008) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely

serious) will not amount to discriminatory changes in the terms and conditions of employment." (internal quotation marks omitted)); see also Daugherty, 231 S.W.3d at 818 (explaining that courts evaluating MHRA claims should look to both Missouri law and federal employment discrimination law that is consistent with Missouri law). The district court thus did not err in granting summary judgment to the defendants on Shirrell's MHRA religious discrimination claim.

Because we conclude that the district court did not err in granting summary judgment on Shirrell's MHRA claims, we need not consider Shirrell's additional argument that the district court should have held Miller individually liable under the MHRA for her participation in the events giving rise to Shirrell's discharge. Even if the MHRA could impose individual liability on Miller, Shirrell's claims against her fail for the above-mentioned reasons. We therefore affirm the district court's grant of summary judgment to St. Francis and Miller on Shirrell's MHRA claims.

III.

We next consider whether the district court erred in granting summary judgment to St. Francis on Shirrell's Title VII claims. To survive a motion for summary judgment with a Title VII claim, a plaintiff must show either direct evidence of a Title VII violation or create an inference of discrimination or retaliation under the McDonnell Douglas burden-shifting framework. See Fiero v. CSG Sys., Inc., 759 F.3d 874, 878 (8th Cir. 2014). Direct evidence of discrimination requires "a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision." Putman v. Unity Health Sys., 348 F.3d 732, 735 (8th Cir. 2003) (alteration in original) (internal quotation marks omitted). In the absence of direct evidence, the McDonnell Douglas framework applies, which requires a plaintiff to make a prima facie case of discrimination or retaliation. See id. If a plaintiff satisfies this burden, the defendant then has the burden of showing a

legitimate, non-discriminatory reason for the challenged action. Id. If the defendant offers such a reason, the burden shifts back to the plaintiff to show the defendant's proffered reason is a pretext. Id.

As an initial matter, Shirrell asserts that the district court erred in granting summary judgment in favor of St. Francis because the district court evaluated the motion under the McDonnell Douglas burden-shifting framework instead of under the elements of each cause of action that a jury would consider during deliberation. This argument is without merit and Shirrell acknowledges as much when she concedes that a plaintiff in an employment discrimination action must satisfy the McDonnell Douglas framework to survive summary judgment. See Appellant's Br. 37 n.6 ("Shirrell acknowledges at present this Court requires plaintiff to establish McDonnell Douglas elements to survive summary judgment[.]").

Shirrell next argues that the district court erred in granting summary judgment to St. Francis on her Title VII religious discrimination claim. Because Shirrell has presented no direct evidence of discrimination, we evaluate her claim under the McDonnell Douglas framework. To establish a prima facie case of religious discrimination, a plaintiff must show: (1) she is a member of a protected class because of her religious beliefs, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination. See Gibson v. Am. Greetings Corp., 670 F.3d 844, 853 (8th Cir. 2012). Circumstances giving rise to an inference of discrimination include treating similarly situated employees who are not members of the protected class in a different manner. Id. at 853-54.

As with Shirrell's MHRA claims, we need not address each element of a Title VII religious discrimination claim because, as a matter of law, the circumstances do not give rise to an inference of discrimination. Shirrell identifies no similarly situated co-workers who were not part of her protected class and who were treated any

differently than she was. She also provides no evidence that the ultimate decision maker in her discharge was biased against her. The same evidence that is fatal to Shirrell's MHRA claims is similarly fatal here: St. Francis terminated Shirrell pursuant to hospital policy after Shirrell accrued 12 disciplinary points; St. Francis terminated Shirrell after consultation with HR; Salter was the ultimate decision maker in the termination; Miller was not involved in the decision to terminate Shirrell; and the basis for Shirrell's discrimination claims was one overheard, offhand remark not directed at Shirrell. See Brannum, 518 F.3d at 548 (explaining that offhand comments and isolated incidents do not give rise to employment discrimination claims). For these reasons and based on this evidence, the district court did not err in granting summary judgment to St. Francis on Shirrell's Title VII religious discrimination claim.

Shirrell finally argues that the district court erred in granting summary judgment on her Title VII retaliation claim. As with her religious discrimination claim, Shirrell has presented no direct evidence of retaliation, requiring our analysis to proceed in accordance with the McDonnell Douglas framework. A prima facie case of retaliation requires a plaintiff to show: (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exists between the two. Brannum, 518 F.3d at 547. To show a causal connection, a plaintiff must show that her protected activity was a but-for cause of her employer's adverse action. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013). As previously discussed, the uncontroverted evidence in the record shows that St. Francis terminated Shirrell pursuant to hospital policy for disciplinary reasons, rather than in response to Shirrell's complaints about Miller's remark. We therefore conclude the district court did not err in granting summary judgment to St. Francis on Shirrell's Title VII retaliation claim.

Because we conclude that Shirrell fails to make a prima facie case for both her religious discrimination and retaliation claims under Title VII, we need not consider

-10-

whether the district court erred in holding that Shirrell failed to prove pretext.  We therefore affirm the district court's grant of summary judgment on Shirrell's Title VII claims.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

_____