# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-2845
_____

David Harrell

*Plaintiff - Appellant*

v.

Gerald Robinson, in his Individual and Official Capacity as the Sheriff of
Jefferson County, Arkansas; Lafayette Woods, in his Individual and Official
Capacity as a duly appointed Deuputy Sheriff of Jefferson County, Arkansas;
Stanley James, in his Individual and Official Capacity as a duly appointed Deuputy
Sheriff of Jefferson County, Arkansas

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: June 6, 2017
Filed: August 21, 2017
[Unpublished]

_____

Before LOKEN, MURPHY, and MELLOY, Circuit Judges.

_____

PER CURIAM.

Plaintiff David Harrell was terminated by the Jefferson County Sheriff's Office (JCSO) in 2009. Harrell alleges that he was terminated in retaliation for his complaint that JCSO employees had discriminated against him on the basis of race. He further alleges that JCSO employees later retaliated against him by providing negative references to other prospective employers. The district court[1] dismissed Harrell's retaliation claims at summary judgment. Harrell appeals, and we affirm.

I.

David Harrell was hired as a detention deputy by the JCSO on March 15, 2007. He was promoted to full time patrol deputy on June 1, 2007. In the span of one month between December 23, 2008 and January 24, 2009, Harrell was involved in three separate auto accidents while on duty. The JCSO determined that the first two accidents were not Harrell's fault. Although he claims that he was not at fault in the third accident, it resulted in his being suspended without pay for thirty days and moved to the JCSO's warrant division.

Harrell, who is Caucasian, stated in an affidavit that at some point before October 2009 he told JCSO Sergeant Randy Dolphin and Lieutenant Thaddeus Handley that he believed the investigation into his third auto accident was one sided and racially discriminatory. The affidavit further states that Dolphin and Handley told Harrell "to leave it alone" and that as long as he "stayed good, a complaint about discrimination would not go in" his file. Harrell interpreted these statements to be a threat.

On October 6, 2009, Harrell received a call from a friend who said that she had driven into a ditch close to Harrell's home and needed help. Harrell was off duty but

---

[1]The Honorable D.P. Marshall Jr., United States District Judge for the Eastern District of Arkansas.

went to help the friend. Corporal Mark Harper also responded to the site, and he later alleged that he had been able to smell intoxicants on Harrell's breath. It appeared to him that Harrell was attempting to help his intoxicated friend evade the law, which Harrell denies. The JCSO began an internal investigation with Sergeant Lafayette Woods in charge. During the course of the investigation, Sergeant Woods discovered that Harrell had worked as an off duty security officer at Bad Bob's Night Club on October 3, 2009 while wearing his battle dress uniform without prior authorization. This was a violation of JCSO policy.

The JSCO scheduled a polygraph for Harrell as part of its investigation. On the day of the scheduled exam, Harrell's pregnant fiancée was admitted to a hospital after losing a significant amount of blood. Harrell subsequently learned that her baby needed to be delivered that day and that her life and that of the baby were at risk. Harrell appeared for the polygraph appointment and was told that it would take several hours and that the results would likely be invalid because of his stress and lack of sleep. Harrell contacted Woods to explain the situation and his concerns. Woods told him to make the right choice and take the polygraph, but Harrell responded that he was willing to take the exam another time. Harrell then returned to the hospital.

On the same day, Woods concluded his investigation of Harrell which found him to have been uncooperative and deceptive and to have violated a number of JCSO policies. Woods recommended that Sheriff Gerald Robinson discharge Harrell, attempt to decertify him as a police officer, and place a letter in his personnel file to prevent his rehiring. Robinson agreed with Woods' recommendation, and Harrell was fired on November 3, 2009. Robinson then sought to have Harrell decertified by the Arkansas Commission on Law Enforcement Standards and Training, a standard process. In Harrell's case, however, the Commission ultimately voted not to decertify him. On February 2, 2010, Harrell filed an EEOC charge claiming that he had been

-3-

disciplined and discharged by the JCSO because of his race "and in retaliation for opposing unlawful disciplinary actions in the past in violation of Title VII."

After Harrell was fired, he found it difficult to obtain employment in the law enforcement field. He first applied to the Pine Bluff Police Department. JCSO Chief Deputy Stanley James subsequently wrote to the chief of the Pine Bluff Police Department on January 11, 2010. James reported in the letter about Harrell's termination and the JCSO's request that he be decertified. Harrell did not receive an offer of employment from Pine Bluff at that time, but that department did hire him years later.

Harrell also applied to the Hot Springs Police Department which notified him on November 22, 2011 that he had been ranked number one among twenty three applicants. Some time after that, a Hot Springs employee did a background check on him which included contact with the JCSO. Harrell had given broad written permission for his previous employers to disclose his past employment records, including "personnel information however personal or confidential it may appear to be." The Hot Springs request also asked for "any information contained in investigatory files, . . . complaints or grievances . . . and any internal affairs investigations and discipline, including any files which are deemed to be confidential, and/or sealed." In response to the Hot Springs request, the JCSO submitted documents from Harrell's employment file. These included Harrell's EEOC complaint against the JCSO and a transcript from the preliminary decertification hearing where Sergeant Woods and Sheriff Robinson had described misconduct by Harrell. The record does not indicate whether the JCSO possessed or disclosed any additional documents, but the Hot Springs Police Department notified Harrell on March 1, 2012 that he had not received the position he sought.

Harrell sued JCSO employees Robinson, Woods, and James in the Western District of Arkansas, alleging they had unlawfully discriminated against him on the

basis of race and military service, retaliated against him for reporting such discrimination, and violated the Family and Medical Leave Act (FMLA). He also sued the City of Hot Springs for failing to hire him. All defendants moved for summary judgment. The district court granted the motion of Hot Springs and transferred the case to the Eastern District of Arkansas.

After the case was transferred, the JCSO defendants renewed their summary judgment motion. The court granted their motion on all of Harrell's claims except his claims under the FMLA and for racial discrimination. Harrell later voluntarily dismissed his racial discrimination claims, and a trial was held on his FMLA claim. The jury found in favor of the defendants. Harrell now appeals the district court's summary judgment order, arguing that the court had erred by dismissing his retaliation claims.

II.

We review de novo the grant of summary judgment and view the facts in the light most favorable to the nonmoving party, making every reasonable inference in its favor. Bradford v. Palmer, 855 F.3d 890, 892 (8th Cir. 2017). Summary judgment is appropriate "if the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. (quoting McPherson v. O'Reilly Auto., Inc., 491 F.3d 726, 730 (8th Cir. 2007)).

Harrell's retaliatory discrimination claims under 18 U.S.C. § 1983, Title VII, and the Arkansas Civil Rights Act are all evaluated under the same standard. See DePriest v. Milligan, 823 F.3d 1179, 1185 (8th Cir. 2016). To prevail on these claims, Harrell "must prove (1) [he] engaged in protected activity; (2) [he] suffered a materially adverse employment action; and (3) the materially adverse action was causally connected to [his] protected activity." Wright v. St. Vincent Health Sys., 730 F.3d 732, 737 (8th Cir. 2013). If a plaintiff does not have direct evidence of

retaliation, "the McDonnell Douglas framework applies, which requires a plaintiff to make a prima facie case of discrimination or retaliation." Shirrell v. St. Francis Med. Ctr., 793 F.3d 881, 887 (8th Cir. 2015). If the "plaintiff satisfies this burden, the defendant then has the burden of showing a legitimate, non-discriminatory reason for the challenged action." Id. Once "the defendant offers such a reason, the burden shifts back to the plaintiff to show the defendant's proffered reason is a pretext." Id.

To establish causation, Harrell "must prove the desire to retaliate was the but for cause of [his] termination—that is, that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of" defendants. Wright, 730 F.3d at 737 (internal quotation marks omitted). It is however not sufficient to establish only "that retaliation was a substantial or motivating factor in the employer's decision," for it must be shown to have been dispositive. Blomker v. Jewell, 831 F.3d 1051, 1059 (8th Cir. 2016) (quoting Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90–91 (2d Cir. 2015)). While "it is not dispositive, 'the length of time between protected activity and adverse action is important' in the causation calculus." Bennett v. Riceland Foods, Inc., 721 F.3d 546, 551 (8th Cir. 2013) (quoting Smith v. Allen Health Sys., Inc., 302 F.3d 827, 833 (8th Cir. 2002)).

A.

Harrell first argues that the district court erred by granting defendants summary judgment on his claim that they retaliated against him for having made a complaint about racial discrimination, by terminating him and seeking to have him decertified as a law enforcement officer. Defendants do not dispute that Harrell met the first two elements of his prima facie retaliatory termination claim. First, he alleges that he engaged in protected conduct by complaining to Sergeant Dolphin and Lieutenant Handley that the investigation into his third auto accident was one sided and racially discriminatory. Second, he alleges that he suffered an adverse employment action when he was terminated on November 3, 2009.

-6-

Even assuming that Harrell has satisfied the first two elements, we conclude that he has failed as a matter of law to establish causal connection for he has not created a genuine issue of fact as to whether his protected conduct was the but for cause of his termination and attempted decertification. Harrell did not produce evidence that either Dolphin or Handley passed on his racial discrimination complaint to the named defendants or that any such information played a role in his own termination or attempted decertification. Moreover, the JCSO stated that it terminated him due to his lack of cooperation during an internal affairs investigation and his several violations of department policy. Such evidence made it less likely that Harrell's comments to Dolphin and Handley caused his discharge and attempted decertification. See Blomker, 831 F.3d at 1059–60. Because Harrell has failed to create a genuine issue of material fact as to causation, we affirm the grant of summary judgment on the retaliation claims arising from his termination and the effort to decertify him as a law enforcement officer.

B.

Harrell also argues that the district court erred by granting defendants summary judgment on his claim that they retaliated against him by providing a negative reference to Hot Springs after he applied for a job.[2] He first alleges that he engaged in a protected activity when he complained about purported racial discrimination. Defendants do not contest that this was a protected activity. Harrell also alleges that he suffered a materially adverse employment action by transmission of documents from his employment file to Hot Springs. Included among them were his EEOC charge and a transcript of his preliminary decertification hearing.

---

[2]Harrell does not argue that the district court erred in granting defendants summary judgment on his claim of retaliatory reference with respect to his application to the Pine Bluff Police Department. He has therefore waived such an argument. See Hernandez v. Holder, 760 F.3d 855, 863 (8th Cir. 2014).

Even assuming that Harrell met the first two elements of his prima facie claim, he has not created a genuine issue of material fact on the element of causation. As the district court correctly pointed out, Harrell did not produce any evidence to show why the EEOC charge or preliminary decertification transcript had been placed in his employment file or provided to Hot Springs. For example, he has not provided evidence about the JCSO's standard procedures regarding record retention, maintenance of employment files, or references. Without evidence that the JCSO departed from its typical practices or disclosed only documents making Harrell appear an unattractive applicant, Harrell has not made a prima facie showing of retaliatory intent. He has therefore failed to create a genuine issue of material fact on causation as to his retaliatory reference claim, and the district court properly granted summary judgment in favor of defendants.

III.

For these reasons we affirm the district court.

_____