# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2815
_____

Delyorce Raye Rebouche

*Plaintiff - Appellant*

v.

Deere & Company, also known as John Deere Company; Rodger Burris,
Individual; Bruce Boardman, Individual

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Northern District of Iowa, Waterloo
_____

Submitted: March 24, 2015
Filed: May 26, 2015
_____

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.
_____

KELLY, Circuit Judge.

Delyorce Raye Rebouche brought claims pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a), and the Iowa Civil Rights Act (ICRA), Iowa Code § 216.6(1)(a), alleging that her employer, Deere & Company a/k/a John Deere Company (Deere), and individuals Rodger Burris and Bruce Boardman (collectively, Defendants) discriminated against her on the basis of sex. She also alleged that the

defendants retaliated against her for opposing an unlawful employment practice under 42 U.S.C. § 2000e-3(a) and Iowa Code § 216.11(2). The district court[1] granted summary judgment in favor of the defendants on all claims. Having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I. Background

Rebouche began working for Deere on October 31, 1977, as a "technician" at the pay level of Grade 4. Three years later she was elevated to Grade 5, still at the level of technician. In 1981, she was promoted to "senior technician" at Grade 6. In 1988, she was elevated to Grade 7 and began working in failure analysis as a chemical/metallurgical engineer. According to Rebouche, she was twice passed over for the position of supervisor of the lab in which she worked, instead being asked to train the new male lab supervisors. During periods when the lab was between supervisors, she operated as the "unofficial supervisor of lab function" but was given no increase in pay or grade level. She reports that when her manager, Burris, formally put Robert Gottschalk in charge of running the lab, Gottschalk told Rebouche that he "didn't think it was right because [she] was most qualified for that position."

In 1998, Rebouche and three other women filed a complaint alleging gender discrimination with Deere human resources. Rebouche listed a number of instances in which Burris had treated women unfairly as compared to their male counterparts. Deere's human resources (HR) department investigated the complaints, and Burris was sent to a two-week sensitivity training. Burris admits that he was aware that a complaint was made against him regarding gender-based pay disparity but claims he was never told who had lodged the complaint. Deere's HR department ultimately concluded that the claims did not warrant further action.

---

[1]The Honorable Jon Stuart Scoles, Chief Magistrate Judge for the Northern District of Iowa, presiding by consent, 28 U.S.C. § 636(c).

Rebouche requested to be elevated to the level of Grade 8 sometime in 1998 or 1999, but her request was denied. She was told that workers must be in a supervisory position to receive a Grade 8 designation. She reports that a male colleague received a Grade 8 designation despite not having any supervisees. In 2001, Rebouche's job in failure analysis was eliminated as a result of downsizing, and she transferred to being a rubber specialist in the materials engineering group. Her salary, job grade, and position title remained the same. She was expected to complete some failure analysis duties on an overtime basis and was paid at the overtime rate for her work.

In 2002, Deere underwent a Global Jobs Evaluation (GJE) process, conducted by global consulting firm Hay Group. Deere hired Hay Group to implement their widely-used method of "mapping" currently existing jobs onto a smaller number of job titles. By the end of the GJE implementation in May 2004, 20,000 positions had been mapped onto 2,100 job titles. About 70% of the jobs received the same grade they had before the evaluation, 10% were in lower grades, and 20% were in higher grades. Rebouche remained the same at Grade 7. Rebouche alleges that none of the women in her department were given grade increases after GJE's rollout, though several men were elevated in pay grade. On appeal she names only Joe Wilson as an example and argues she and Wilson had the "same responsibilities." Pre-GJE, Joe Wilson was a Senior Engineer at Grade 8 and through the GJE process was promoted to Staff Engineer Product at Grade 9.

Burris retired in 2004 and Boardman became Rebouche's supervisor. On October 27, 2004, Rebouche filed a complaint with the Equal Employment Opportunity Commission (EEOC), alleging sex and age discrimination. On November 5, 2004, the EEOC cross-filed Rebouche's claims with the Iowa Civil Rights Commission (ICRC).

On November 18, 2004, Boardman gave Rebouche a performance rating of "Exceeds Expectations." A year later, Rebouche received a "Fully Meets

Expectations" rating. Rebouche never approached Boardman with her concerns that these reviews were not as high as she thought she deserved. She complains that Boardman was "not very nice" to her during this period. In 2006, Jay Olson became Rebouche's supervisor. In 2007, she received a job title change and a promotion to Grade 8. Three years later, she was promoted to a staff engineer position, assumed team-leader responsibilities, and subsequently received pay at Grade 9.

On August 31, 2012, Rebouche filed this lawsuit alleging sex discrimination and retaliation under Title VII of the Civil Rights Act and the ICRA. The district court found that (1) Rebouche's claims of discrimination occurring prior to 2004 were time-barred, (2) she had failed to establish she was treated differently than similarly situated male employees during the GJE process in 2004, and (3) she had not shown she had suffered any adverse employment action as a result of her complaint to the EEOC. The court granted summary judgment in favor of Defendants on all claims. Rebouche appeals, contesting each of the court's conclusions.

## II. Discussion

We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to Rebouche, the non-moving party. Butler v. Crittenden Cnty., Ark., 708 F.3d 1044, 1048 (8th Cir. 2013).

### 1. Time-barred

Title VII requires a person claiming discrimination to file a charge "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Iowa law contains a similar requirement that claims be filed with the ICRC within three-hundred days. Iowa Code § 216.15(13). In her initial brief to this court, Rebouche argued that her "claims arising before 2004 [when she brought her complaint to the EEOC] were not barred" because they constituted a

"continuing violation," which tolled the applicable statutes of limitation while the discriminatory actions continued to be performed. However, the Supreme Court squarely rejected this "continuing violation" theory in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002), holding that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180—or 300—day time period after the discrete discriminatory act occurred." See also Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 851 (8th Cir. 2012) ("[Morgan] abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." (quotation omitted)). The Supreme Court of Iowa has held this to be true for claims filed under the ICRA as well. Dindinger v. Allsteel, Inc., 860 N.W.2d 557, 571–72 (Iowa 2015) ("Discrete discriminatory acts are 'separately actionable,' not a basis for invoking the continuing violation theory.").

The Court in Morgan acknowledged an exception to its bar on the consideration of discriminatory actions that occur outside the statutory period, but solely for hostile work environment claims. Morgan, 536 U.S. at 117. Rebouche makes no such claim here, and thus she can not recover for discriminatory activity that occurred before she approached the EEOC in 2004. We therefore may not consider the alleged discriminatory acts Rebouche encountered in 1998 and 2001, regardless of their merit, as they occurred years before she filed a formal complaint.

2. 2004 GJE mapping

Rebouche's claim of discrimination that allegedly occurred in 2004 as a result of Deere's company-wide GJE implementation is not time-barred because she filed a sex discrimination claim with the EEOC in 2004. The district court, finding that Rebouche had not provided any direct evidence of discrimination, analyzed her claim

regarding the 2004 action under the "burden-shifting framework" outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To establish a prima facie case of sex discrimination, Rebouche must show that she: "(1) is a member of a protected class; (2) was meeting her employer's legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated employees who were not members of her protected class." Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs., 728 F.3d 800, 804 (8th Cir. 2013).

In ruling on Deere's motion for summary judgment, the district court determined that Rebouche satisfied the first three elements of the McDonnell Douglas test because (1) she is a woman, (2) who was meeting her employer's expectations, and (3) was not promoted during the 2004 GJE implementation. A failure to promote can be an example of an "adverse employment action." AuBuchon v. Geithner, 743 F.3d 638, 643 (8th Cir. 2014). The court went on to rule, however, that Rebouche had failed to satisfy the fourth factor because she had not identified any male colleagues who had been similarly situated to her and promoted in 2004.

On appeal, the only male employee that Rebouche says was similarly situated to her is Wilson. Before the GJE process, Wilson was a senior engineer at Grade 8 and Rebouche was a chemical/metallurgical engineer at Grade 7. After GJE, Wilson was promoted to Staff Engineer Product at Grade 9 while Rebouche remained at Grade 7. Rebouche claims that she and Wilson were similarly situated because they had the "same type of responsibilities" before GJE. But Rebouche does not explain further just what those responsibilities were or provide any evidence of the tasks they allegedly each performed. Nor does Rebouche present any evidence regarding Wilson's work history, education, or other qualifications to compare to her own. Without any additional distinguishing evidence, we are left with only their job titles and pay grades in determining if Rebouche and Wilson were similarly situated.

While "[t]he burden of establishing a prima facie case of disparate treatment is not onerous," Torgerson v. City of Rochester, 643 F.3d 1031, 1047 (8th Cir. 2011) (en banc), the plaintiff must be able to produce some evidence of similarity between her and her comparator. Rebouche has failed to produce any such evidence and has therefore failed to show that Wilson, who had a different job title and pay grade, was similarly situated to her. In addition, several men who *were* similarly situated to Rebouche, in that they were at Grade 7 before GJE, remained at Grade 7 after GJE like Rebouche. We therefore agree with the district court that Rebouche has failed to establish a prima facie case of sex discrimination. To the extent that Rebouche argues she *should* have had the same job title and pay grade as Wilson pre-GJE, because she believes they had the same responsibilities, this disparity is "an effect of a past discriminatory act" that falls outside the limitations period. Dindinger, 860 N.W.2d at 572.

### 3. Retaliation

Title VII makes it unlawful for an employer to discriminate against an employee because she has "made a charge, testified, assisted, or participated . . . in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). The ICRA similarly makes retaliatory action unlawful. Iowa Code § 216.11(2).

Rebouche asserts that Deere retaliated against her for filing the 2004 sex discrimination claim with the EEOC by giving her poor performance reviews and delaying her promotion to Grade 8. The district court condensed these claims into one because a negative performance review on its own does not constitute an "adverse employment action" as required under the statute unless the review was relied on in making promotion decisions about the employee. Turner v. Gonzales, 421 F.3d 688, 696 (8th Cir. 2005). Thus, the only question is whether Rebouche's promotion was delayed in retaliation for her EEOC complaint. The "employee has the initial burden of establishing a prima facie case of retaliation by showing that (1) [s]he engaged in

protected conduct, (2) [s]he suffered a materially adverse employment action, and (3) the adverse action was causally linked to the protected conduct." Pye v. Nu Aire, Inc., 641 F.3d 1011, 1021 (8th Cir. 2011). The "ultimate question" is "whether the employer's adverse action against the employee was motivated by retaliatory intent." Tyler v. Univ. of Ark. Bd. of Trustees, 628 F.3d 980, 985 (8th Cir. 2011) (quotation omitted).

Rebouche was promoted to Grade 8 in 2007 and three years later was promoted again to Grade 9. While she claims these promotions were delayed by her supervisor, Boardman, she has failed to present any evidence of a causal connection between her alleged promotion delay and her EEOC claim. As the district court pointed out, there is nothing in the record to indicate Boardman even knew that a complaint had been filed. Rebouche's performance reviews throughout this period were consistently positive: She received an "Exceeds Expectations" rating in 2004, and in 2005 her review said she "Fully Meets Expectations." Without any evidence to support a causal connection between the delay in her promotion and her prior claim of discrimination, we agree with the district court that Rebouche has failed to establish a prima facie case of retaliation.

## III. Conclusion

We affirm the district court's grant of summary judgment for the Defendants on all claims.

_____