# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-1523
_____

Jeff Bonomo

*Plaintiff - Appellant*

v.

The Boeing Company

*Defendant - Appellee*

_____

No. 22-1531
_____

Jeff Bonomo

*Plaintiff - Appellant*

v.

The Boeing Company

*Defendant - Appellee*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 14, 2022
Filed: March 29, 2023

_____

Before SMITH, Chief Judge, GRUENDER and STRAS, Circuit Judges.

_____

SMITH, Chief Judge.

Jeff Bonomo began working for McDonnell Douglas in 1985. He stayed there until it merged with The Boeing Company (Boeing) in 1997. In 2017 and 2018, Bonomo unsuccessfully applied for promotions within Boeing. Both times, the promotion was given to younger candidates who scored better in the interview. In 2017, the promotion went to an employee aged 33; in 2018, to one aged 34. Bonomo retired from Boeing on January 1, 2020.

Bonomo alleges that Boeing discriminated against him on the basis of age, in violation of the Missouri Human Rights Act (MHRA). Bonomo brought two separate lawsuits, now consolidated, alleging age discrimination in relation to the 2018 opening and a claim for constructive discharge.[1] The district court[2] granted summary judgment in favor of Boeing on both claims, holding that Bonomo (1) failed to demonstrate a material dispute as to whether Boeing's stated rationale for the hiring decision was a mere pretext for age discrimination and (2) failed to timely file a complaint with the Missouri Commission on Human Rights within six months of when his constructive-discharge claim accrued. We affirm.

I. *Background*

Given their public availability, we briefly recount the salient facts for this appeal, and we do so "in the light most favorable to . . . the non-moving party." *Lombardo v. City of St. Louis*, 38 F.4th 684, 686 (8th Cir. 2022).[3]

_____

[1]Bonomo also alleged retaliation but does not challenge the grant of summary judgment as to that claim in this appeal.

[2]The Honorable Sarah E. Pitlyk, United States District Judge for the Eastern District of Missouri.

[3]There are two lower court opinions under review here. *See Bonomo v. Boeing Co.*, No. 4:21-CV-00411-SEP, 2022 WL 579242 (E.D. Mo. Feb. 25, 2022); *Bonomo*

Boeing uses a standard process for internal promotions. First, the hiring manager posts the position, inviting employees to apply. Then, the most qualified applicants are interviewed. A panel composed of the hiring manager and other Boeing employees conducts the interviews; this process usually includes other managers, directors, or human resources employees. The panel asks all interviewees the same set of questions. The panelists then generate numerical scores for the applicants. Bonomo applied for two different promotions, one in 2017 and one in 2018, and was interviewed for both. He scored poorly in the structured interview both times, and the promotions went to other applicants.

## A. *The 2017 Opening*

In 2017, Bonomo, then age 62, applied for a promotion to a more senior management level position. The preferred qualifications for the position included a master's degree and significant work experience. Bonomo, who does not have a master's degree, did not submit a resume for the position. When a panelist asked Bonomo about the missing resume, Bonomo wrote back, "I have worked for Boeing for over 30 years. I didn't think a resume would say anything more than my work history already says." R. Doc. 22, at 4. Five applicants, including Bonomo, were selected for interviews. Bonomo did not prepare answers to expected interview questions. Bonomo was interviewed by the hiring manager, then age 53; the acting director of the program, then age 55; a senior manager, then age 56; and a human resources employee, then age 57.

Bonomo scored the lowest out of the five interviewees. The employee who received the promotion, Aaron Boswell, then age 33, received the highest interview score. The panel's assessment stated that Bonomo's responses in the interview were poor, that he seemed arrogant and entitled, and that they believed he was a less capable leader than Boswell.

*v. Boeing Co.*, No. 4:19-CV-03394-SEP, 2022 WL 579243 (E.D. Mo. Feb. 25, 2022). Record citations are to the former case.

## B. *The 2018 Opening*

In 2018, Bonomo applied for a similar opening with identical requirements and preferred qualifications. Bonomo was again interviewed. This time, the panel consisted of the hiring manager for the position, then age 36; a senior manager in the department, then age 30; and the director of the department, then age 37. The opening Bonomo had applied for was filled in the interim by Daniel Oetjen, then age 34, who was chosen for the interim position by the hiring manager. Oetjen had also applied for the 2017 opening, but he had not been interviewed. Oetjen applied for the 2018 promotion while serving as interim manager and was selected for an interview. Oetjen has a master's degree.

Bonomo again did not score well on the interview, receiving a consensus score of 17.5 out of a maximum of 35. Oetjen substantially outperformed him with a consensus score of 25.5. The only other candidate interviewed received a consensus score of 21. The panel stated that Oetjen's interview demonstrated stronger leadership skills, more detailed and nuanced answers, and a superior communication style. The panel agreed that Oetjen had outperformed Bonomo on six of seven factors and tied with him on the seventh. J.A. at 249 (scoring both Oetjen and Bonomo a "3," the average, on "[c]ustomer [f]ocus"). The hiring manager chose to promote Oetjen, the interim manager, to the position permanently. On the form submitted indicating Oetjen's selection, the hiring manager did not write down a reason for his choice but checked a box labeled "[n]o other factors were considered other than the structured interview. (check box if applicable)." J.A. at 499. After prompting from the human resources department, the hiring manager said the selection was based solely on the strength of Oetjen's interview. On November 4, 2019, Bonomo sued Boeing in Missouri state court for age discrimination based on its selection of a younger candidate to fill the 2018 opening. The state suit was removed to federal court.

## C. *Termination and Suit*

Bonomo sent his manager an email on November 25, 2019, stating: "I've terminated my employment with Boeing as of 01/02/2020. You should receive paperwork that you will need to fill out. Can you please let me know when you

receive the termination paperwork." R. Doc. 22, at 17. Bonomo completed his termination paperwork on December 2, 2019, and retired following January 1, 2020. Bonomo filed a second charge of discrimination alleging constructive discharge based on age with the Missouri Commission on Human Rights on May 28, 2020. The next year, Bonomo initiated a suit in Missouri state court against Boeing alleging constructive discharge on February 24, 2021. The state suit was removed to federal court.

## II. *Discussion*

Bonomo challenges the district court's grant of summary judgment in favor of Boeing as to his age-discrimination and constructive-discharge claims. "We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to . . . the non-moving party." *Rebouche v. Deere & Co.*, 786 F.3d 1083, 1086 (8th Cir. 2015); *see also* Fed. R. Civ. P. 56(a).

## A. *Discrimination by Failure to Hire*

Under the MHRA, it is unlawful for an employer to refuse to hire, to discharge, or to otherwise discriminate against an individual because of the individual's age. Mo. Rev. Stat. § 213.055.1(1)(a). This occurs when the individual's age was the "motivating factor"; i.e., when it "actually played a role in the adverse action or decision and had a determinative influence on the adverse decision or action." *Id.* §§ 213.010(2), (19). This standard requires proof that age was more than a mere contributing factor in the adverse decision or action and is comparable to the standard utilized under federal Title VII. *Lampley v. Mo. Comm'n on Hum. Rts.*, 570 S.W.3d 16, 22 (Mo. 2019) (en banc) ("When reviewing cases under the [MHRA], appellate courts are guided by both Missouri law and any federal employment discrimination (i.e., Title VII) case law that is consistent with Missouri law." (cleaned up)).

Bonomo presents no direct evidence of discrimination. A plaintiff who presents no evidence of direct discrimination must satisfy the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973); *Button v. Dakota, Minn. & E. R.R. Corp.*, 963 F.3d 824, 831 n.5 (8th Cir.

2020) (acknowledging Missouri courts' application of *McDonnell Douglas* in the context of the MHRA). The framework operates in three steps. The plaintiff must first prove a prima facie case of age discrimination. *McDonnell Douglas*, 411 U.S. at 802. The burden then shifts to the defendant, who must rebut by offering evidence of a legitimate, nondiscriminatory reason for the hiring decision. *Id.* The burden then returns to the plaintiff, who must show that the proffered reason is merely a pretext for intentional discrimination. *Id.* at 804. However, because the plaintiff must eventually prove that he was the victim of intentional discrimination, "the plaintiff must do more than simply create a factual dispute as to the issue of pretext; he must offer sufficient evidence for a reasonable trier of fact to infer discrimination." *Canning v. Creighton Univ.*, 995 F.3d 603, 612 (8th Cir. 2021) (cleaned up); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993) ("It is not enough, in other words, to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." (emphasis in original)).

Boeing does not dispute the existence of a prima facie case. Boeing contends that it chose to promote Oetjen instead of Bonomo on the nondiscriminatory bases of Bonomo's poor interview scores, weaker interview answers, and the less favorable impressions of his interviewers. The district court considered seven arguments Bonomo made to demonstrate Boeing's stated reasons were pretextual. Bonomo reiterates those arguments on appeal, contending that the district court failed to consider the totality of the circumstances and failed to view the facts in the light most favorable to Bonomo, the non-moving party. We consider each argument briefly in turn.

First, Bonomo argues that Boeing failed to follow its own policy. *See Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010) (identifying a failure to follow its own policies as one possible method of showing employer's pretext). Bonomo highlights language in the Boeing Enterprise Staffing Handbook, which implies that more than just the interview is to be considered in making hiring

decisions.[4] However, Boeing provides an express instruction to hiring managers that they are only "encouraged" to consider factors beyond the structured interview.[5] In addition, Boeing's standardized interview booklet provides the hiring manager with a checkbox option that says "[n]o other factors were considered than the structured interview." J.A. at 499.[6] The booklet instructs hiring managers to check the box "if applicable," i.e., if they relied exclusively on the structured interview. *Id.*

On this record, no reasonable factfinder could conclude that Boeing violated its own policies in considering only the structured interview. Boeing provided hiring managers a checkbox to indicate that they considered only the structured interview, and the hiring manager here checked the box. Bonomo argues that we must construe the record in the light most favorable to him. True, the summary judgment standard does require that. *See Rebouche*, 786 F.3d at 1086. But it does not require finding a contradiction between two provisions if the record as a whole could not sustain that conclusion. Indeed, the record demonstrates that what Bonomo cites is a general policy, superseded with appropriate authority by a more specific, nuanced policy. As such, Bonomo's first argument fails.

---

[4]"When making the final hiring decision consider the structured-interview rating and job-relevant work history, job-relevant information provided by the candidate, education, technical knowledge, performance management, corrective action, and other assessments." J.A. at 187–88. The Boeing Enterprise Staffing Handbook is a comprehensive tome containing over a hundred pages of minutia. *See* J.A. at 174–78. The handbook also notes that "Global Staffing has been delegated sole authority to manage and deliver staffing services by several [Boeing] governance documents," and that the "handbook is designed to provide a high level overview of policies." R. Doc. 23-1, at 10–11.

[5]"When making a selection decision, the hiring manager is encouraged to consider other factors beyond the structured interview, such as unique skills, education, certification, capabilities, experiences, approved assessments." J.A. at 131. (emphasis omitted).

[6]The standardized interview booklet is prepared by Global Staffing. R. Doc. 23-1, at 10.

Second, Bonomo argues that Boeing has a pattern of hiring younger employees. Bonomo cites his own non-promotions in 2017 and 2018, as well as the interim hiring of Oetjen, as evidence. Bonomo's evidence falls short of the standard required to show a pattern of age discrimination. *See, e.g.*, *Wittenburg v. Am. Exp. Fin. Advisors, Inc.*, 464 F.3d 831, 837–38 (8th Cir. 2006) (affirming summary judgment against the plaintiff even when the defendant fired eight of its oldest employees, gave four of the remaining five oldest employees low performance ratings that set them up for termination next year, and the record included statements by a corporate decisionmaker arguably expressing a preference for younger employees).

Third, Bonomo argues that Boeing's use of the interview alone is evidence of pretext. This is incorrect. *Id.* at 839 ("[T]he presence of subjectivity in employee evaluations is *itself* not a grounds for challenging those evaluations as discriminatory." (internal quotation marks omitted)). Instead, Bonomo must point to some evidence to support his allegation that the low interview scores are pretext for intentional age discrimination. Bonomo fails to do so. The interviewers provide specific examples of Bonomo's negatives and Oetjen's positives.[7] The interviewers agree that Bonomo failed to provide specific answers to questions. Some thought

---

[7]Although the interview records are handwritten and difficult to read, the interviewers were deposed or provided declarations about the interview records and their impressions of Bonomo and Oetjen in 2018. *See* Declaration of James Dewees, J.A. at 218–27 (providing a detailed analysis of Bonomo and Oetjen's interviews); Deposition of Mark Sears, J.A. at 444 ("[Bonomo] did not articulate [his experience] in a way that demonstrated the [] communication style or the leadership that we expect of a senior manager."); Declaration of Amy Amin, J.A. at 659–62 (describing Bonomo's answers as insufficiently specific, while lauding Oetjen's answers, consistent with her interview record). Their testimony aligns with related record evidence from the 2017 interviewers. *See* Declaration of Catherine Buehrle, J.A. at 253 ("I had the impression that Bonomo assumed the panelists knew him and knew his experiences and assumed that he would be given the position as a result."); Declaration of John Harig, J.A. at 406–08 (stating Bonomo did not interview well, that it seemed like "he felt he would get the job"); Deposition of Randy Illum, J.A. at 507 ("I do remember Mr. Bonomo's interview. There seemed to be some arrogance about his interview.").

Bonomo seemed entitled and arrogant; others thought that Bonomo lacked desired leadership skills. The 2018 interviewers preferred Oetjen's communication style. None of Bonomo's interviewers—in either 2017 or 2018—preferred him to the candidates who were hired. Bonomo bears the burden of providing a plausible alternative perspective. Because he has not done so, there is no genuine dispute of material fact as to whether the subjectivity of the interview was used to create a pretext for intentional discrimination.

Fourth, Bonomo argues that a reasonable jury could conclude that Boeing's exclusive reliance on the structured interviews is "wholly without merit or obviously contrived." *Nelson v. Boatmen's Bancshares, Inc.*, 26 F.3d 796, 801 (8th Cir. 1994). Bonomo provides little to justify this assertion. The structured interviews are ordinary practice for Boeing, and it is patently unsurprising that interview performance is a substantial factor in a company's promotion decisions. Dismissing reliance on interview performance as being "wholly without merit or obviously contrived" requires evidence reaching that high bar. This record lacks such evidence.

Fifth, Bonomo argues that the composition of the 2018 panel shows pretext. The 2018 panel included the hiring manager and two individuals that the hiring manager knew well. All three panelists were much younger than Bonomo. Bonomo asks the court to infer from this that Boeing formed the younger panel to discriminate against him on the basis of age. But the age of the panelists alone is insufficient to show age animus. *See McKay v. U.S. Dep't of Transp.*, 340 F.3d 695, 700 (8th Cir. 2003) (holding that a panel's composition alone is insufficient to demonstrate pretext absent some evidence sufficient to infer it was composed with a discriminatory intent). Bonomo provides no reason apart from the panel's age to infer Boeing's intentional discrimination.

Sixth, Bonomo argues that because Oetjen was unqualified for the 2017 position, he was objectively less well qualified than Bonomo for the 2018 opening. Were this the case, Bonomo could potentially make a compelling case, as "[i]t is 'common business practice to pick the best qualified candidate for promotion. When

that is not done, a reasonable inference arises that the employment decision was based on something other than the relative qualifications of the applicant.'" *Cox v. First Nat'l Bank*, 792 F.3d 936, 939 (8th Cir. 2015) (quoting *McCullough v. Real Foods, Inc.*, 140 F.3d 1123, 1129 (8th Cir. 1998)). However, the plaintiff must demonstrate that the selected applicant is actually less qualified. *Id.* The role of the court is only to ensure that Bonomo was not discriminated against on account of his age; we do not "sit as [a] super-personnel department[] reviewing the wisdom or fairness of the business judgments made by [Boeing]." *Cronquist v. City of Minneapolis*, 237 F.3d 920, 928 (8th Cir. 2001).

Bonomo has not presented sufficient evidence to enable a factfinder to conclude that Oetjen was an objectively less well-qualified candidate than him for the 2018 opening. Oetjen scored a 9 on a pre-interview worksheet based on his 2017 resume, and Bonomo scored a 13. Boswell, who received the 2017 job, scored a 14. This range is not so distant as to demonstrate Oetjen was objectively less well qualified in 2018 more than a year later. Two other facts clearly support the conclusion that no reasonable factfinder could decide Oetjen was objectively less well qualified: Oetjen performed much better in the interview and had a master's degree, which was a preferred qualification for the job. Bonomo does not have a master's degree, and the interviewers reached a consensus that Bonomo interviewed poorly.

Seventh, Bonomo argues that the initial omission of a written reason for Oetjen's selection on the hiring form is evidence of pretext. Bonomo is correct that the hiring form initially contained no written reason for the selection; after prompting, the hiring manager wrote that it was because of the interview. However, the panelists had all previously indicated that the interview was the reason for Oetjen's hiring. The omission of a written reason on one page of a particular form, when the reason given elsewhere on the same form was eventually reiterated, does not give rise to an inference of pretext.

Bonomo argues that the district court incorrectly weighed the totality of these allegations. Although each of these factors individually might not be sufficient to

-10-

survive summary judgment, Bonomo argues that the recitation of all of them is sufficient to allow a reasonable factfinder to find that Boeing's proffered reason was pretext intended to hide its intentional discrimination against Bonomo on the basis of his age.

Bonomo is correct about the law and the nature of summary judgment. Evaluation of a summary-judgment motion requires assessing the proffered evidence in the light most favorable to the non-moving party. If the evidence, so viewed, establishes that material facts remain to be determined in order to conclude whether the non-moving party is entitled to relief, summary judgment should be denied. *See* Fed. R. Civ. P. 56(a). However, if no genuine dispute of a material fact remains, and the record facts viewed in the light most favorable to the non-moving party do not establish entitlement to relief, summary judgment must be granted. *See Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1125 (8th Cir. 2017); Fed. R. Civ. P. 56(a) (using mandatory language).

Bonomo alleges that (1) he was 30 years older than Oetjen; (2) the hiring manager and committee members were around Oetjen's age; (3) the interview alone was the justification for the hiring; (4) hiring on the basis of an interview may violate one Boeing policy; (5) the hiring manager initially wrote no reason for Oetjen's hiring on one page of a form; (6) the 2017 and 2018 hirings are evidence of a pattern of discrimination; and (7) Oetjen was objectively less well-qualified than Bonomo. Viewed in their totality, Bonomo argues that these facts could lead a reasonable factfinder to find in Bonomo's favor at trial.

We disagree. The undisputed facts, viewed in the light most favorable to Bonomo and considered in their totality, prevent a reasonable factfinder from finding in Bonomo's favor. The 2017 panel was made up of panelists close to Bonomo's age who provided similar reasons to the 2018 panel for refusing to hire Bonomo. There were objective components to the process, including an initial screening and a preference for candidates with a master's degree. The panelists provided specific and consistent feedback on Bonomo's negatives and Oetjen's positives, as they had with

-11-

Bonomo and Boswell in 2017. Bonomo received the lowest score of any applicant in 2017. He again received the lowest score—substantially lower than Oetjen—in 2018. Rather than forbid hiring managers from relying only on the structured interviews, Boeing placed a checkbox for hiring managers to use if they hire exclusively on the basis of the interview. The hiring manager in 2018 checked the box. The 2018 panelists all agreed, on the basis of the interview alone, that Oetjen was the preferred candidate. There is no record evidence of a pattern of discrimination at Boeing, and Bonomo has pointed to only the two hirings in 2017 and 2018 in an attempt to establish one. Oetjen has a master's degree, a preferred qualification for the 2018 job, and Bonomo does not. Bonomo did not prepare specific answers for the 2018 interview, despite knowing the questions to be asked.

We conclude that Bonomo has failed to rebut the non-age based, legitimate reasons offered by Boeing for its choice to hire Oetjen instead of him. The district court's grant of summary judgment is affirmed.

B. *Constructive Discharge*

Bonomo alleges that the district court erred in dismissing his constructive-discharge claim as untimely. We disagree. The MHRA requires "[a]s a jurisdictional condition precedent" that an aggrieved individual file a complaint with the Missouri Commission on Human Rights within 180 days of the alleged act of discrimination. Mo. Rev. Stat. § 213.075.1. Failure to timely file may be raised as a complete defense. *Id.* As such, we apply the rule from *Green v. Brennan*: "[A] constructive-discharge claim accrues—and the limitations period begins to run—when the employee gives notice of his resignation, not on the effective date of that resignation." 578 U.S. 547, 564 (2016).

Bonomo sent an email to his manager on November 25, 2019, informing him, "I've terminated my employment with Boeing as of 01/02/2020," and asking that his manager let him know when he receives the termination paperwork. R. Doc. 22, at 17. Bonomo filed his termination paperwork on December 2, 2019. Bonomo filed his complaint with the Missouri Commission on Human Rights on May 28, 2020.

Bonomo alleges that his termination paperwork started the clock, not his email. Bonomo is incorrect. "If an employee gives 'two weeks' notice'—telling his employer he intends to leave after two more weeks of employment—the limitations period begins to run on the day he tells his employer, not his last day at work." *Green*, 578 U.S. at 564. Bonomo gave his employer a little more than five weeks' notice. But his claim still accrued then—on the day he gave notice, not the day he filed the paperwork. Because May 28, 2020, falls 185 days after November 25, 2019, Bonomo's complaint was untimely and thus barred. We affirm the district court's grant of summary judgment in favor of Boeing on the constructive-discharge claim.

## III. *Conclusion*

Accordingly, we affirm.

_____